**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TONYA AKES, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| v. | Case No. 3:22-cv-869 |
| BEIERSDORF, INC., | September 12, 2022 |
| *Defendant.* | |

## BEIERSDORF, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

**INTRODUCTION**…………………………………………………………….…………1

**BACKGROUND**……………………………………………………………..............3

**ARGUMENT**………………………………………………………………………….7

**I.   PLAINTIFF HAS NOT PLEADED AND CANNOT PLEAD THE ELEMENTS OF HER STATUTORY CONSUMER CLAIMS.** ........................................................ 7

**A.   Plaintiff Has Not Pleaded Any Deception.**……………………………………7

**B.   Plaintiff Has Not Pleaded That She Suffered Any Injury.**…………………………12

**C.   Plaintiff Has Not Pleaded Causation.**…………………………………………15

**D.   Plaintiff's Statutory Claims Fail For Lack Of Reliance.**……………………………16

**II.   PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.**......... 17

**CONCLUSION**………………………………………………………………………17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*23-34 94th St. Grocery Corp. v. N.Y.C Bd. of Health*,
    685 F.3d 174 (2d Cir. 2012).................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................7, 9

*Boris v. Wal-Mart Stores, Inc.*,
    35 F. Supp. 3d 1163 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016) .............11, 13

*Brazil v. Dole Packaged Foods, LLC*,
    660 F. App'x 531 (9th Cir. 2016) .........................................................16

*Cerasani v. Sony Corp.*,
    991 F. Supp. 343 (S.D.N.Y. 1998) ......................................................9

*Collins v. eMachs., Inc.*,
    202 Cal. App. 4th 249 (2011) ...........................................................17

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ...........................................................8

*Doe v. SuccessfulMatch.Com*,
    70 F. Supp. 3d 1066 (N.D. Cal. 2014) ...................................................13

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
    423 F. Supp. 2d 173 (S.D.N.Y. 2006)....................................................6

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) .............................................................8

*Groff v. Smith*,
    34 F. Supp. 319 (D. Conn. 1940)......................................................6, 14

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..................................................8

*Hall v. Time Inc.*,
    158 Cal. App. 4th 847 (2008) .........................................................13, 15

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................7

*Kendall v. Bluetriton Brands, Inc.*,
No. 22-CV-10511, 2022 WL 2789501 (C.D. Cal. July 13, 2022)...........................16

*Kwikset Corp. v. Superior Court*,
246 P.3d 877 (Cal. 2011) ............................................................13, 16

*Lokey v. CVS Pharmacy, Inc.*,
No. 20-CV-04782-LB, 2021 WL 633808 (N.D. Cal. Feb. 18, 2021), *appeal dismissed*, No. 21-15475, 2021 WL 2456822 (9th Cir. May 21, 2021) ..................12

*Parent v. Millercoors LLC*,
No. 3:15-CV-1204-GPC-WVG, 2016 WL 3348818 (S.D. Cal. June 16, 2016) ....................11

*Patsy's Italian Rest., Inc. v. Banas*,
575 F. Supp. 2d 427 (E.D.N.Y. 2008), *aff'd* 658 F.3d 254 (2d Cir. 2011)..............6

*Peterson v. Cellco Partnership*,
164 Cal. App. 4th 1583 (2008) ............................................................13, 17

*Princess Cruise Lines, Ltd. v. Superior Ct.*,
179 Cal. App. 4th 36 (2009) ............................................................12

*Reid v. Johnson & Johnson*,
780 F.3d 952 (9th Cir. 2015) ............................................................16

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) ............................................................15

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007)............................................................4

*In re Song PS3 Other OS Litig.*,
551 F. App'x 916 (9th Cir. 2014) ............................................................17

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ............................................................7

*Stewart v. Riviana Foods Inc.*,
No. 16-cv-6157, 2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017) ............................................................4

*United States v. Bari*,
599 F.3d 176 (2d Cir. 2010)............................................................9

*Vizcarra v. Unilever United States, Inc.*,
339 F.R.D. 530 (N.D. Cal. 2021)............................................................7

*Webb v. Trader Joe's Co.*,
  999 F.3d 1196 (9th Cir. 2021) ......................................................................................4

*Williams v. Apple, Inc.*,
  449 F. Supp. 3d 892 (N.D. Cal. 2020) ...............................................................15, 16

**Statutes**

Cal. Health & Saf. Code ("California Sherman Act"), HSC § 109875 ...........................................8

California Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq....................7, 11, 13, 15

California's False Advertising Law ("FAL"), Cal. Bus & Prof. Code §§ 17500-
  17606.................................................................................................................... *passim*

California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200
  et seq. .................................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................................................7

Fed. R. Civ. P. 12(b)(6)..............................................................................................................7

## INTRODUCTION

This case presents a most peculiar theory of alleged consumer fraud. That theory fails for both lack of deception and lack of injury, neither of which is curable here. And Plaintiff's claims fail for other reasons too.

Plaintiff alleges that she purchased a unit of Coppertone Sport Mineral FACE sunscreen—which is packaged in a small, 2.5 ounce, travel-sized container that is easily portable and complies with the Transportation Security Administration's liquids rule, allowing it to be carried onto flights—based on her belief that it was "specifically formulated" or "specifically designed" "for use on the face," noting that the package stated "FACE," "Won't Run Into Eyes," and "Oil Free." *See* Class Action Complaint (ECF No. 1) ("Compl.") ¶¶ 1, 23–24. Plaintiff calls "Won't Run Into Eyes" and "Oil Free" "face-specific representations," emphasizing that "'[o]il-free' is important for face use because, as consumers know, oil can clog pores and lead to break outs on the face.'" *Id.* ¶ 14 & n.3. Plaintiff makes no allegations, however, that these representations on the products label were deceptive. She does not, for instance, allege that the product she purchased was *not* "Oil Free," or that it *does* "Run Into Eyes." Nor does Plaintiff allege any other facts to suggest that the product lacked other properties that render it appropriate for use on one's face, or that Beiersdorf did not test it for facial application. Plaintiff has no complaint about the advertised properties of the product she purchased or its performance. Nonetheless, she asserts that she paid more for the product than she should have and therefore was deceived.

Plaintiff's theory is effectively premised on a different label for a Coppertone Sport Mineral sunscreen that she did *not* purchase. She observes that the Coppertone Sport Mineral sunscreen in the *5* ounce package—*i.e.*, double the volume of the one she purchased and therefore not as portable, let alone TSA-compliant for carry-on travel—had the same formulation as the

product she purchased but that the label on the 5 ounce bottle did *not* advertise the sunscreen's face-appropriate characteristics. *See*, *e.g.*, *id.* ¶ 21. Plaintiff claims this *failure* to advertise on the larger sized product its face-appropriate characteristics somehow rendered deceptive the labeling for the 2.5 ounce product. She says this is so because the online retailers she identifies charge substantially less per ounce for the 5 ounce package than they do for the 2.5 ounce package that bears the face-related representations. *See id.* ¶¶ 18–19. From this ordinary volume or bulk pricing discount, she purports to deduce deception regarding the 2.5 ounce product, claiming that the 2.5 ounce package of the product deceives consumers into paying more per ounce for the 2.5 ounce product than they do for the 5 ounce product because of the face-specific characteristics advertised on the smaller product's label. *Id.* ¶¶ 20-21.[1]

But Plaintiff cannot establish any deception because the 2.5 ounce product labeled as having face-related characteristics in fact *has them*. The fact that another 5 ounce product *also* has those characteristics—but does not emphasize them on the label—does not transform the undeniably true statements on the 2.5 ounce product's label into deceptive ones. Furthermore, Plaintiff does not claim that the price per ounce of the 2.5 ounce package of sunscreen she purchased is remotely out-of-step with the price per ounce that the same online retailers charge for other manufacturers' sunscreens with similar attributes that are sold in similarly sized packages. She would be unable to do so. The retailers' websites that she incorporates by reference in her complaint show that competitors' similarly sized sunscreens marketed for facial use sell for similar amounts per ounce, if not significantly more per ounce. *See infra* at 5–6. Similarly, as for the

---

[1] Plaintiff acknowledges that the labels for *both* the 2.5 ounce product and the 5 ounce product state "100% NATURALLY SOURCED ZINC OXIDE," Compl. ¶¶ 12-13, but ignores the widely known fact that dermatologists recommend "mineral sunscreen with zinc for your face because it's non comedogenic (meaning it won't clog your pores and cause breakouts)." *See*, *e.g.*, https://www.menshealth.com/grooming/g36319692/best-zinc-oxide-sunscreens/; *see infra* at 8 & n.7.

Coppertone sunscreens, these retailers' websites show that the price per ounce of competitors' sunscreen products drops if consumers purchase larger sized sunscreen products. *See infra* at 6; *see also infra* at 14–15 (same for different line of Coppertone sunscreens).

Plaintiff has not been deceived, has not sustained an economic injury, has not pleaded causation or reliance. Her consumer protection and unjust enrichment claims fail for these reasons and others as well. This case should be dismissed.

## **BACKGROUND**

Beiersdorf, Inc. ("Beiersdorf") manufactures a variety of different lines of Coppertone sunscreen products that it markets to consumers in different ways given that consumers have different desires and needs. *See generally* Compl. ¶¶ 1–2, 6, 10–13. Plaintiff Tonya Akes purchased a particular sunscreen in the Coppertone Sport Mineral line of products, a line that includes several zinc oxide-based products. *See*, *e.g.*, *id.* ¶¶ 10–17.

Specifically, Plaintiff purchased the 2.5 ounce Sport Mineral FACE 50 [SPF] lotion (the "Product"). *Id.* ¶ 23; *see id.* ¶ 13. The label on the Product states, *inter alia*, that it contains "100% NATURALLY SOURCED ZINC OXIDE," and is "Water Resistant (80 Minutes)." *Id.* ¶ 13. The Product's label also bears the word "FACE," and the label states that the Product "Won't Run Into Eyes" and is "Oil Free." *Id.* As Plaintiff observes, "'Oil Free' is important for face use because, as consumers know, oil can clog pores and lead to break outs on the face." *Id.* ¶ 14 & n.3.

Also in the Sport Mineral line is the 5 ounce Sport Mineral 50 [SPF] lotion. *See id.* ¶ 12. It too is labeled, *inter alia*, "100% NATURALLY SOURCED ZINC OXIDE," *id.*—a characteristic significant to facial use, *see supra* at 1 n.1; *infra* at 8 n.7—and "Water Resistant (80 Minutes)," Compl. ¶ 12. Unlike the 2.5 ounce Product just discussed, however, the larger bottle's label states that the product "RESISTS Sweat + Heat + Water." *Id.* The 5 ounce product does not bear the

words FACE, "Won't Run into Eyes" or "Oil Free." *Id.* Consistent with federal Food and Drug Administration regulations, the labels for both the 2.5 ounce Product and the 5 ounce product include the full list of active and inactive ingredients found in the products. *See* Declaration of Eamon P. Joyce ("Joyce Decl."), Ex. A (full product labels).[2] Those ingredient lists are identical. *See id.*

These differently sized packages of the two Coppertone Mineral sunscreen lotions present different utility. The smaller, 2.5 ounce Product can be tucked into a purse, brief case, or pocket and is therefore fit for everyday or on-the-go use on one's face or other small areas of exposed skin, whereas the larger 5 ounce bottle facilitates full-body application. Moreover, given federal government regulations, a consumer can fly with the smaller bottle that Plaintiff purchased in carry-on baggage, but a consumer cannot do so with the 5 ounce bottle that Plaintiff did not purchase. *See* Transportation Security Administration ("TSA"), *Liquids Rule*, at https://www.tsa.gov/travel/security-screening/liquids-rule. The TSA itself has recognized the significance of carry-on sunscreen to consumers, issuing press releases on the subject. *See* https://www.tsa.gov/news/press/statements/2021/04/12/statement-regarding-sunscreen-carry-bag.

Plaintiff, a California resident, alleges that she purchased the Product (a single 2.5 ounce bottle of Coppertone Sport Mineral FACE 50 lotion) at a Walmart Supercenter in Fresno,

---

[2] The Court may consider "[d]ocuments that are attached to the complaint or incorporated in it by reference" on a motion to dismiss. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (explaining that "when the complaint alleges that such a document made a particular representation, the court may properly look at the document to see whether that representation was made"). Here, the Complaint references (and in fact includes pictures of portions of) the product labels, specific representations on the Coppertone Sport Mineral FACE bottle and the Coppertone Sport Mineral bottle, and the formulations of the products. *See, e.g.*, Compl. ¶¶ 21, 22. The Court may therefore review the complete labels at the pleading stage. *See, e.g.*, *Roth*, 489 F.3d at 509; *Stewart v. Riviana Foods Inc.*, No. 16-cv-6157, 2017 WL 4045952, at *6–7 (S.D.N.Y. Sept. 11, 2017) (taking judicial notice of product labels that are "'incorporated by reference' in the Complaint, in that the Complaint discusses each at length"); *see also Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) (district court properly "took judicial notice of the labels" of products at issue).

4

California around June of 2022. Compl. ¶ 23. She says that she "read and relied on the 'FACE' statement, as well as the additional face-specific representations on the front label of the product"—*i.e.*, "Won't Run Into Eyes" and "Oil Free," *id.* ¶ 17—"when she purchased the product," *id.* ¶ 24. Plaintiff alleges that "[b]ased on these representations, [she] believed that the product was specially formulated for use on the face, and bought it specifically for this reason." *Id.* She does not allege that the label statements "Won't Run Into Eyes" or "Oil Free" are deceptive, or that the Product does not contain the characteristics making it appropriate for use on the "FACE." Nor does Plaintiff plead any facts to suggest that the Product was not, in fact, "specially formulated for use on the face," or even to define what reasonable consumers would understand "specifically formulated for use on the face" to mean had the label said any such thing (and it did not).[3]

Nonetheless, Plaintiff contends that the (non-deceptive) face-related representations on the label for the 2.5 ounce Product give rise to a claim of deception because although the sunscreen in the 2.5 ounce bottle contains the same ingredients and formulation as the 5 ounce bottle, independent retailers like Amazon and Walmart charge more per ounce for the 2.5 ounce Product than they do for the 5 ounce bottle of Coppertone Sport Mineral lotion that does not bear face-related labeling. *Id.* ¶¶ 12, 21, 24. Plaintiff attributes the price difference to the face-related representations on the label for the smaller bottle. *Id.* ¶ 24 ("the price [Plaintiff] paid for this product was inflated due to the misleading FACE and face-specific representations"). Plaintiff does not plead any facts supporting this supposed connection between the face-specific representations and the price. Plaintiff also asserts nothing regarding Beiersdorf's wholesale

---

[3] While Plaintiff says she construed the representations to mean the Product was "specifically formulated" for use on the face, Compl. ¶ 24, Plaintiffs' counsel otherwise states that consumers believe that the product is "specifically designed for the face," *id.* ¶ 2. The Complaint does not explain what, if any, difference there is between these two articulations.

pricing of its sunscreens, or how, if at all, Beiersdorf's actions affect the prices that the third-party retailers charge for Beiersdorf's sunscreens.

Nor does Plaintiff allege that the price of the Product is higher than or inconsistent with the price of similar mineral-based face-appropriate sunscreen products sold by the third-party retailers she references. The Amazon website incorporated by reference in the Complaint, for example, shows that Amazon sells (i) a smaller 2 ounce package of Neutrogena Sheer Zinc Face mineral sunscreen SPF 50 for $10.87 ($5.44/ounce), (ii) a smaller 2 ounce package of Aveeno Positively Mineral Sensitive Skin Daily Sunscreen Lotion for Face SPF 50 with 100% Zinc Oxide for $9.98 ($4.74/ounce), and (iii) a 2.5 ounce package of CeraVe 100% Mineral Sunscreen SPF 50 (with Zinc Oxide) for $13.99 ($5.60/ounce).[4] That is, Amazon sells all three mineral-based sunscreens labeled for facial use for more money per ounce than Amazon charged for the 2.5 ounce package of sunscreen Plaintiff purchased, which cost $3.99/ounce. *See* Compl. ¶ 19 & n.8. As with the Coppertone sunscreens, these other manufacturers' sunscreens, as is the common practice at retail and wholesale, carry discounts when purchased in larger sizes. *See generally*, *e.g.*, *Groff v. Smith*, 34 F. Supp. 319, 323 (D. Conn. 1940) ("We all know that lower unit prices are available to [those] who buy in bulk than to the consumer who buys loaf by loaf."). The price of the Aveeno product, for example, drops to $3.16/ounce when purchased from Amazon in a 3 ounce package.[5]

---

[4]     *See*     https://www.amazon.com/Neutrogena-Dry-Touch-Sunscreen-Non-Comedogenic-Non-Greasy/dp/B01MDOA0V4;   https://www.amazon.com/Aveeno-Positively-Lightweight-Non-Comedogenic-Travel-Size/dp/B07HS25PSG/;                                  https://www.amazon.com/Mineral-Sunscreen-Titanium-Dioxide-Sensitive/dp/B07KLY4RYG. In addition to the Amazon and other retailers' websites being incorporated by reference into the Complaint, those websites are appropriately judicially noticed. *See, e.g.*, *23-34 94th St. Grocery Corp. v. N.Y.C Bd. of Health*, 685 F.3d 174, 183 n.7 (2d Cir. 2012) ("tak[ing] judicial notice of a poster recently published on [a website]"); *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet."), *aff'd* 658 F.3d 254 (2d Cir. 2011); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 178-79 n.8 (S.D.N.Y. 2006) (similar).

[5] https://www.amazon.com/Aveeno-Positively-Water-Resistant-TSA-Friendly-Travel-Size/dp/B07HS43JZP.

Premised solely on her inflated price theory of perceived deception, Plaintiff filed a putative class action complaint, asserting violations of California's Unfair Competition Law ("UCL"), California Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"), along with a claim for unjust enrichment. *Id.* ¶¶ 36, 42–62, 63–67.[6]

## ARGUMENT

A complaint must be dismissed under Rule 12(b)(6) if it does not "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[L]abels and conclusions" or "formulaic recitation of the elements of a cause of action" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, because Plaintiff's statutory claims "sound in fraud," "the pleading as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (discussing the UCL and CLRA); *see also Vizcarra v. Unilever United States, Inc.*, 339 F.R.D. 530, 545 n.4 (N.D. Cal. 2021) (discussing UCL and FAL and explaining that where such claims "are premised on alleged misrepresentations in product packaging or advertising, the claims are said to sound in fraud; accordingly, courts routinely hold that the claims must be pleaded with the heightened degree of particularity required by Rule 9(b)").

## I.   PLAINTIFF HAS NOT PLEADED AND CANNOT PLEAD THE ELEMENTS OF HER STATUTORY CONSUMER CLAIMS.

### A.   Plaintiff Has Not Pleaded Any Deception.

Plaintiff's claims under the UCL, CLRA, and FAL fail. Compl. ¶¶ 36; 42–62. To state a claim for deception under these statutes, a plaintiff must show that a "reasonable consumer" "is

---

[6] Plaintiff notes that she intends to bring claims under the Consumer Protection Acts of other states on behalf of the Consumer Protection Subclass at the class certification stage, but she concedes that her claims at the motion to dismiss stage are governed solely by California law. Compl. ¶ 36. Stated differently, there is no one presently before the Court with standing to assert causes of action based on other states' laws. *See generally, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) ("'That a suit may be a class action adds nothing to the question of standing . . .'") (alteration in original omitted). Accordingly, no other causes of action are before the Court.

likely to be deceived" by the alleged misrepresentation. *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012) (internal citations and quotation marks omitted); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). California's reasonable consumer standard "requires a probability 'that a significant portion of the general consuming public . . . could be misled.'" *Id.* at 965 (citation omitted).[7]

Plaintiff's claim of deception is that the Product's labeling allegedly wrongly "lead[s] reasonable consumers to believe that the Sport Mineral FACE lotion is specifically designed for the face," Compl. ¶¶ 1–2, and that Plaintiff allegedly wrongly "believed," based on "face-specific representations on the front label of the product," that it "was specifically formulated for use on the face," *id.* ¶ 24. The label itself, as discussed, makes no express "specifically designed for the face" or "specifically formulated for use on the face" representation, and Plaintiff does not plead facts to explain what it would mean for a product to be so-formulated or so-designed. Instead, Plaintiff says that she and other consumers form these beliefs based on the Product's (i) "FACE," (ii) "Oil-Free," and (iii) "Won't Run Into Eyes" labeling statements. *E.g.*, *id.* ¶¶ 14, 18, 24. Plaintiff emphasizes that being oil-free "is important for face use because, as consumers know, oil can clog pores and lead to break outs on the face." *Id.* ¶ 14 n.3.

---

[7] Plaintiff additionally purports to bring claims under the unlawful and unfair prongs of the UCL. Compl. ¶¶ 45, 47. But these claims collapse into her overall deception claim and fail for the same reasons. Plaintiff bases her unlawful prong claim on alleged violations of the FAL and the California Sherman Act. *Id.* But Plaintiff pleads no facts to support those theories beyond the alleged deception discussed herein, and thus the analysis for both merges with that of the fraudulent prong of the UCL under the "reasonable consumer" test. *Supra* § I.A (FAL); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1098–99 (N.D. Cal. 2017) (Sherman Act). Plaintiff's unlawful prong claim fails along with her fraudulent prong claim. *Id.* at 1094 ("If a plaintiff cannot state a claim under the predicate law, [the UCL] claim also fails.") (internal citations omitted) (alteration in original). Plaintiff's unfair prong claim also fails because it is not based on any facts apart from those Plaintiff alleges in support of her other state law claims. *Id.* at 1105–06 (collecting cases holding that "where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive.").

Yet Plaintiff fails to allege that any of these three statements are deceptive, despite that her "specifically designed/formulated for the face"-related theory hinges on them. Rather, she tacitly admits they are not. She does not allege that (i) the Product is unfit for use on the face, (ii) that it contains oils, or (iii) that it runs into the eyes. Similarly, while seemingly contending that avoiding clogged pores or break outs is most critical to whether a product can be used on the face, *see* Compl. ¶ 14 n.3, Plaintiff does not allege that the Product clogs pores or leads to breakouts on the face. Furthermore, Plaintiff acknowledges that the labels for both the 2.5 ounce Product and the 5 ounce product state "100% NATURALLY SOURCED ZINC OXIDE," *id.* ¶¶ 12–13, when it is widely known that dermatologists recommend zinc-based and other mineral-based sunscreens precisely because they do not clog pores or cause breakouts.[8] Again, Plaintiff does not challenge the accuracy of the zinc oxide-related representation.

And, even putting aside that the Product does not actually represent that it is specifically designed/formulated for the face, Plaintiff offers no explanation of what it means for a product to be specifically so-designed/formulated other than through the three admittedly non-deceptive representations just discussed. In short, even if it were reasonable for a consumer to read the Product's labeling to make such implied representations, Plaintiff pleads no facts to suggest that the Product was *not* so designed/formulated. Plaintiff does not (and cannot), for example, claim

---

[8] *See*, *e.g.*, https://www.today.com/shop/best-sunscreen-acne-prone-skin-t252686 (quoting dermatologist for the proposition that "'mineral sunscreens that use titanium or zinc are generally better tolerated and are recommended for those with sensitive skin'"); https://www.nbcnews.com/select/shopping/best-sunscreen-acne-ncna1232737 ("Two non-comedogenic ingredients commonly found in sunscreen are zinc oxide and titanium dioxide.") https://www.menshealth.com/grooming/g36319692/best-zinc-oxide-sunscreens/;
https://www.bu.edu/articles/2021/how-to-choose-face-sunscreen-dermatologist-tips/. These widely publicized and commonly known facts about zinc oxide and mineral sunscreens are judicially noticeable. *See*, *e.g.*, *United States v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010) (discussing propriety of judicial notice of generally known facts and those capable of accurate and ready determination through sources whose accuracy cannot reasonably be questioned, and condoning district court's ability to confirm its "common sense supposition" through internet research); *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 354 & n.3 (S.D.N.Y. 1998) (Chin, J.) (taking judicial notice, on motion to dismiss, of widespread media coverage) (collecting cases); *see also Twombly*, 556 U.S. at 556 (allowing a court to draw on its experience and common sense at the motion to dismiss stage).

that Beiersdorf did not specifically test the Product for facial use, that the Product fails to comply with industry best practices regarding products designed/intended for use on the face, that the Product breaches dermatological or other professional recommendations for facial use, and so on.

Instead of offering any factual allegations to contradict any of the three face-related representations that actually appeared on the Product's label or the zinc oxide representation, Plaintiff complains that the larger, identically formulated 5 ounce bottle of Coppertone Mineral Sport 50 lotion—which Plaintiff did not purchase—does not bear the "FACE" label and associated face-related labeling claims, and is sold for less money per ounce by third-party retailers. Compl. ¶¶ 2–3, 18, 20, 24 ("The difference in pricing further indicates to reasonable consumers that the FACE product is specially formulated for the face, while the regular product is not. . . . Ms. Akes would not have purchased this product if she had known that the product was, in fact, identical to regular Coppertone Sport Mineral FACE, which costs half as much.").[9]

This is an illogical theory of deception that does not save Plaintiff's claims. Beiersdorf made accurate face-related labeling representations about the properties of the Product. If Beiersdorf had made those same representations on the label of the 5 ounce bottle, they would have been equally accurate. That Beiersdorf chose not to do so on the 5 ounce bottle—instead choosing to emphasize different characteristics of it, namely it "RESISTS Sweat + Heat + Water," Compl. ¶ 12—does not convert the also-accurate representations on the 2.5 ounce bottle into deceptive ones. There is nothing deceptive about emphasizing different (but equally true) aspects of a product to different market segments, or pricing products differently when sold to different market segments or in different retail channels. This happens every day.

---

[9] The failure to challenge the zinc oxide-related representation is notable insofar as whatever the Complaint means by "designed/formulated for the face," it is plain that the Product at issue here is designed and formulated with zinc oxide, which is viewed as beneficial for facial use.

Nor does the fact that the 5 ounce bottle's label emphasizes different attributes of the sunscreen than the 2.5 ounce bottle's label make anything inherently deceptive about the "specifically designed/formulated for the face" conclusion Plaintiff attempts to glean from the 2.5 ounce Product's label. That the labeling for the 5 ounce bottle does not have any representations that would allegedly lead a consumer to conclude that it was specifically designed/formulated for the face—although, again, Plaintiff ignores the zinc oxide-related representation—does not speak to whether the sunscreen was or was not so designed/formulated. Famously, for example, Viagra was researched, designed, and formulated as a treatment of high blood pressure and heart disease, but has been marketed almost exclusively for erectile dysfunction. Regardless of its marketing, it remains true that the medication was designed and formulated for high blood pressure and heart disease.

Finally, California law rejects the notion that price alone can be deceptive. In *Boris v. Wal-Mart Stores, Inc.*, plaintiffs sued under the UCL, FAL, and CLRA because the product "Equate Migraine" had the exact same formula as "Equate Extra Strength Headache Relief" even though "Migraine" was more expensive and had a different color package. 35 F. Supp. 3d 1163, 1168 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016). The court granted the defendant's motion to dismiss because "all of these statutes require some act, statement, or omission by the defendant[, and] Equate Migraine's price and packaging color do not constitute an act or statement on which to premise liability." *Id.* Just as in *Boris* and other California cases, Plaintiff's claim of deception depends on the Product's price, and it fails as a result. *See id.*; *Parent v. Millercoors LLC*, No. 3:15-CV-1204-GPC-WVG, 2016 WL 3348818, at *8 (S.D. Cal. June 16, 2016) (pricing of Blue Moon did not "constitute a representation about the product" that would mislead a consumer into believing it was a craft beer) (internal citations omitted); *see also Boris*, 35 F. Supp. 3d at 1171–

72 (plaintiff's "claim requires the judiciary to make pricing decisions, such as ruling that pharmacologically identical drugs must be the same price or may have only a limited price differential, or imposing liability for differential pricing on a necessarily unpredictable case-by-case basis"); *Princess Cruise Lines, Ltd. v. Superior Ct.*, 179 Cal. App. 4th 36, 46 (2009) ("In the absence of legislatively crafted standards, it is not for us to lay down economic policy that passes on the reasonableness of charges."); *Lokey v. CVS Pharmacy, Inc.*, No. 20-CV-04782-LB, 2021 WL 633808, at *4 (N.D. Cal. Feb. 18, 2021) ("[B]ecause there is no deception beyond the price differential, the plaintiff's challenge is a non-justiciable challenge to CVS's pricing decisions."), *appeal dismissed*, No. 21-15475, 2021 WL 2456822 (9th Cir. May 21, 2021).

For all these reasons, there is no deception here. Plaintiff does not allege she did not receive a face-appropriate sunscreen or that any other representations on the Product's label are deceptive. A manufacturer is not obligated to call out on its labeling that its sunscreen is fit to apply to the face regardless of the container size in which that sunscreen is sold. Nor is a manufacturer obligated to make such representations in lieu of *other* labeling representations that appear on a particular package size simply because a smaller package has different labeling.[10] Even if a manufacturer were so required, it would not help Plaintiff because she did not purchase the 5 ounce bottle on which she suggests that Beiersdorf also should have told consumers that it too was appropriate for facial use.

### B.    Plaintiff Has Not Pleaded That She Suffered Any Injury.

---

[10] Plaintiff nowhere acknowledges that the 5 ounce bottle's label also said that it "RESISTS Sweat + Heat + Water," much less (i) explains what Beiersdorf should have done with those representations on the 5 ounce bottle had it also included FACE-related representations, or (ii) addresses the fact that the 2.5 ounce bottle does not make those "RESISTS"-related representations despite also offering those properties. She does not because she cannot. A manufacturer needs to make choices about what labeling representations are likely to be most appealing and meaningful to the average purchaser of a particular product packaged in a particular size.

Plaintiff's claims also fail for lack of injury. To state a claim under the UCL, FAL, or CLRA, or for unjust enrichment, a plaintiff must "establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e. *economic injury*." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 884 (Cal. 2011) (emphasis in original).[11] Where a plaintiff received the benefit of her bargain, there is no economic injury. *See, e.g.*, *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008). For example, in *Hall*, the court held that plaintiff failed to allege economic injury where "he expended money" "but he received a book in exchange" and "did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it." *Id.*

This is Plaintiff's problem. She wanted and got a sunscreen fit for facial application, that is "Oil Free" and that does not "Run Into Eyes," and she does not allege that the 2.5 ounce product was actually worth less than she paid for it.

To the contrary, Plaintiff's supposed injury is that the third-party retailers whose prices she invokes have not imposed her ideas of price control by selling a larger volume product for the same price per ounce as a smaller volume product. *Contra Boris*, 35 F. Supp. 3d at 1171 ("[P]rice setting is ordinarily left to the business judgment of merchants.").[12] This is not the place for statutory consumer claims, and Plaintiff's theory of injury is—again—illogical. For example, it would upend the practice of volume-based pricing and the benefits of buying in bulk. Her complaint is that the price of the Product per ounce—when purchased in half the amount of another

---

[11] *See also Kwikset Corp.*, 246 P.3d at 890–892 (recognizing that injury may exist where "the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled *accurately*") (emphasis added); *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1590 (2008) ("[O]nly plaintiffs who have suffered actual damage may pursue a private UCL action."); *Doe v. SuccessfulMatch.Com*, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014) ("[T]o adequately plead a CLRA claim, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result."); *Peterson*, 164 Cal. App. 4th at 1594–95 (plaintiff must allege actual injury to assert unjust enrichment claim).

[12] As Plaintiff recognizes, the price of the Product differs from retailer to retailer. Walmart sells the 2.5 ounce bottle for $9.98, while Walgreens sells it for $11.99. Compl. ¶ 19 & n.8.

Coppertone Mineral Sport sunscreen—was "inflated" in comparison to an identically formulated product sold in a larger size (a size with less utility with respect to travel and less portability more generally) with different labeling representations on its larger package. But every consumer knows that buying in greater quantity ordinarily yields them a better price by piece, by weight, or by volume. As a judge in this district summarized 82 years ago, "[w]e *all* know that lower unit prices are available to [those] who buy in bulk." *Groff*, 34 F. Supp. at 323 (emphasis added). Today, moreover, we all know that a whole industry of retailers—*e.g.*, Sam's Club, Costco, etc.—has developed to appeal to such consumer sensibilities.

Finally, Plaintiff does not and cannot allege that the retail price of the Product is out of line with similar mineral-based face sunscreen options on the market. *See supra* at 5–6. The retailer websites Plaintiff incorporates by reference into her Complaint dispel Plaintiff's fact-free suggestion that she was harmed by "inflated" pricing for the quantity of the product she purchased in light of its labeled face-related attributes.[13] As discussed above, Beiersdorf's competitors' mineral, face sunscreen products routinely sell for more per ounce than the Product Plaintiff purchased when packaged in containers with similar—and greater—volume.

Plaintiff has not been *injured* financially by purchasing the Product, which delivered on what it represented it would, at the price she agreed to pay simply because better per ounce prices were available had she bought a package of Coppertone Mineral Sport sunscreen lotion that contained twice the quantity of sunscreen.

---

[13] Plaintiff not only ignores the attribute differences between the 2.5 ounce bottle and the 5 ounce bottle—namely, the convenience and TSA-compliant portability of the 2.5 ounce bottle—but also ignores that the retailers' websites on which she relies market the TSA-compliance of sunscreens (as do Beiersdorf and other sunscreen manufacturers). *See* https://www.amazon.com/Aveeno-Positively-Lightweight-Non-Comedogenic-Travel-Size/dp/B07HS25PSG/ ("The TSA-friendly travel size means you can easily take the daily facial sunscreen wherever you go."); https://www.aveeno.com/products/positively-mineral-sensitive-skin-sunscreen-spf-50 ("Non-comedogenic, & TSA-friendly travel size"); https://www.coppertone.com/products/coppertone-sport-sunscreen-lotion-on-the-go-spf30-0003501.html ("Portable, convenient and perfect for carry-ons").

C.       **Plaintiff Has Not Pleaded Causation.**

To state a claim under the UCL, FAL, or CLRA, "the plaintiff must allege that 'the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 912 (N.D. Cal. 2020); *see also Hall*, 158 Cal. App. 4th at 855 (requiring "showing of a causal connection"); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1111 (N.D. Cal. 2016) (CLRA requires that damage occur "as a result of an unlawful act").

Plaintiff alleges that the price she paid for the Product was "inflated" over the price charged by retailers for the 5 ounce bottle of Coppertone Sport Mineral sunscreen lotion without the face-specific representations (again, ignoring that both had the zinc oxide-based representation). Compl. ¶ 24; *see id.* ¶ 19 (alleging "Coppertone Sport Mineral FACE costs twice as much as regular Coppertone Sport Mineral" at Walmart and Amazon). But Plaintiff does not allege a causal link between her (non-existent) injury and any conduct by Beiersdorf. Plaintiff passingly comments that "Defendant is able to charge twice as much for Coppertone Sport Mineral sunscreen when it is prominently labelled 'FACE' and includes face-specific representations." *Id.* ¶ 22. However, Plaintiff pleads nothing about what anyone besides third-party retailers charge, or why. For example, Plaintiff pleads nothing about the wholesale prices charged by Beiersdorf or about any role Beiersdorf has in setting various retailers' prices for various products. Moreover, her Complaint shows that the Product's price varies from retailer to retailer—Walmart sells the 2.5 ounce bottle for $9.98, while Walgreens sells it for $11.99. *See* Compl. ¶¶ 19 & n.8.

Furthermore, Plaintiff pleads nothing to suggest that the disparity in price per ounce between the 2.5 ounce Product she purchased and the 5 ounce bottle that she did not is noteworthy given standard volume or bulk discounts. To the contrary, the Amazon website on which her Complaint relies shows that consumers can purchase Coppertone SPORT Sunscreen SPF 30 for

15

as little as $0.95/ounce if they purchase 7 ounce bottles, https://www.amazon.com/Coppertone-Sunscreen-Resistant-Lotion-Spectrum/dp/B09P4CL9BH, whereas Amazon sells the 3 ounce "Travel Size" bottle of the same sunscreen for $2.58/ounce, https://www.amazon.com/Coppertone-Sport-Sunscreen-Lotion-SPF/dp/B0173G3FQE.

The only connection between the face-related label representations and the price of the Product is Plaintiff's *ipse dixit*. Given the lack of facts pleaded to link the claimed (but non-existent deception) about facial attributes to the per ounce price difference charged by retailers for the 2.5 ounce Product versus the 5 ounce bottle, Plaintiff's claims must be dismissed. *See Williams*, 449 F. Supp. 3d at 912.

### D. Plaintiff's Statutory Claims Fail For Lack Of Reliance.

Under the California consumer statutes at issue, a plaintiff must allege sufficient facts to show that they actually relied on the particular statements that they are challenging. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); *Kwikset*, 246 P.3d at 888. Here, as detailed above, Plaintiff's claims are not actually based on the label for the Product she purchased, but instead are based on a comparison of the label on the Product she purchased with the label for the 5 ounce product she did not. This is fatal for purposes of reliance because Plaintiff makes no allegation that she saw, let alone, relied on the label for the 5 ounce bottle in deciding to purchase the 2.5 ounce Product. *See* Compl. ¶¶ 23-24 (alleging that Plaintiff saw only the label for the 2.5 ounce Product); *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (affirming dismissal because plaintiff "did not see the allegedly offending statements before he purchased the fruit"); *Kendall v. Bluetriton Brands, Inc.*, No. 22-CV-10511, 2022 WL 2789501, at *7 (C.D. Cal. July 13, 2022) (dismissing claims based on representations that plaintiff "did not see" before his purchase).

## II.     PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Finally, Plaintiff's unjust enrichment claim fails for several reasons. At the outset, it should be dismissed for the same reasons her statutory claims fail: she received the benefit of her bargain, and thus has not pleaded any conduct that is unjust, and she has not alleged that she suffered an actual injury caused by Beiersdorf's conduct rather than the conduct of third-party retailers. To state an unjust enrichment claim, Plaintiff must plead "the receipt of a benefit and the unjust retention of the benefit at the expense of another," *Peterson*, 164 Cal. App. 4th at 1593 (citation omitted), and actual injury, *id.* at 1594–95. As explained above, however, Plaintiff does not allege that any of the statements that induced her purchase are false; she received the benefit of her bargain and "[t]here is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected." *Id.* (quoting *Comet Theatre Enters., Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952)).

Moreover, Plaintiff's claim fails for the independent reason that unjust enrichment "will not be given when the plaintiff's remedies at law are adequate." *Collins v. eMachs., Inc.*, 202 Cal. App. 4th 249, 260 (2011). Plaintiff does not allege that her statutory counts, which provide remedies at law, are somehow inadequate. Thus, "[i]n light of the adequate legal remedies available, Plaintiff[] cannot state a claim for unjust enrichment." *See, e.g.*, *In re Song PS3 Other OS Litig.*, 551 F. App'x 916, 923 (9th Cir. 2014) (affirming dismissal of unjust enrichment claim).

## CONCLUSION

For the foregoing reasons, Beiersdorf respectfully requests that the Court grant its motion to dismiss.

Dated: September 12, 2022

/s/ *Kim E. Rinehart*
Kim E. Rinehart (ct24427)
WIGGIN AND DANA LLP

17

One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
Telephone: (203) 498-4363
Facsimile: (203) 782-2889
krinehart@wiggin.com

Eamon P. Joyce*
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
ejoyce@sidley.com

T. Robert Scarborough±
tscarborough@sidley.com
Elizabeth M. Chiarello±
echiarello@sidley.com
Caitlin A. Maly*
cmaly@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Tel: (312) 853-7000

*Admitted Pro Hac Vice
Counsel for Defendants
± Pro Hac Vice Applications
Forthcoming
Counsel for Beiersdorf, Inc.