# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| Tonya Akes, individually and on behalf of all others similarly situated, | Case No. 3:22-cv-869-JBA |
| *Plaintiff,* | |
| v. | **JURY TRIAL DEMANDED** |
| Beiersdorf, Inc. | |
| *Defendant.* | |

## First Amended Class Action Complaint [1]

---

[1] To streamline the motion to dismiss briefing, the parties have agreed that Defendant's motion to dismiss the original Complaint will be deemed withdrawn without prejudice upon the filing of this Amended Complaint. *See* Dkt. 34. Plaintiff believes that the arguments raised in Defendant's motion to dismiss lack merit and intends to oppose any motion to dismiss the Amended Complaint.

The parties have also jointly requested an extension of the deadline for Plaintiff to file an Amended Complaint, and to set the schedule for Defendant to file an answer or move to dismiss the Amended Complaint. Dkt. 34. Because the Court has not yet decided that motion, out of an abundance of caution, Plaintiff is filing this Amended Complaint by the original deadline. As set forth in the joint motion, however, Plaintiff would appreciate the opportunity for additional time to amend the Complaint. Accordingly, if the Court grants the motion, Plaintiff reserves the right to file an updated version of this Amended Complaint by October 14 (the agreed timeframe specified in the motion).

## Table of Contents

I.     Introduction. ............................................................................................................ 1

II.    Parties. ..................................................................................................................... 2

III.   Jurisdiction and venue. ........................................................................................... 2

IV.    Facts. ........................................................................................................................ 3

     A.     Defendant makes, markets, distributes and sells Coppertone Sport Mineral
and Coppertone Sport Mineral FACE sunscreen lotions. ...................................... 3

     B.     The Coppertone Sport Mineral FACE label is misleading to reasonable
consumers. .............................................................................................................. 9

     C.     Plaintiff was misled by Defendant's misrepresentations. ................................... 13

V.     Class action allegations. ....................................................................................... 14

VI.    Plaintiff has no adequate remedy at law. ............................................................. 16

VII.   Claims. ................................................................................................................... 17

VIII.  Jury demand. ......................................................................................................... 24

IX.    Relief. .................................................................................................................... 24

## I.      Introduction.

1.      Defendant makes, distributes, sells, and markets "Coppertone Sport Mineral" sunscreen.   Defendant sells several products in the "Coppertone Sport Mineral" line.  One of those products, the "Coppertone Sport Mineral FACE" lotion, is prominently labelled "FACE." The front of the product also prominently touts that the sunscreen "Won't Run Into Eyes" and is "Oil Free."



2.      These prominent representations lead reasonable consumers to believe that the Sport Mineral FACE lotion is specifically designed for the face.  And based on this reasonable belief, they are willing to pay more for the product.  In fact, per ounce, the Sport Mineral FACE

lotion costs twice as much as Coppertone's regular (i.e., non-face) Sport Mineral lotion.  But reasonable consumers buy it anyway, because they want a product that is specifically formulated for use on their face.

3.     The truth, however, is that the Coppertone Sport Mineral FACE lotion is not specifically formulated for the face.  There is nothing special about Coppertone Sport Mineral FACE that makes it any better for facial applications than regular Coppertone Sport Mineral (which is not specifically formulated for the face, and instead is designed for full-body applications.)  In fact, Coppertone Sport Mineral FACE is exactly the same as the regular Coppertone Sport Mineral lotion.  Defendant is putting the same sunscreen into two different bottles with different labels, and charging more for one of them.  Consumers are being deceived and overcharged.

## II.    Parties.

4.     Plaintiff Tonya Akes is a citizen of California (domiciled in Fresno).

5.     The proposed class(es) include citizens of numerous states.

6.     Defendant Beiersdorf, Inc. is a Delaware corporation with its principal place of business in Stamford, Connecticut.  Defendant makes, labels, distributes, sells, and markets the Coppertone Sport Mineral FACE products.  Defendant is responsible for the making, labelling, distribution, selling, and marketing of the Coppertone Sport Mineral FACE products throughout the applicable statute of limitations period.

## III.    Jurisdiction and venue.

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class(es) are citizens of a state different from the Defendant.

8.      The Court has personal jurisdiction over Defendant.  Defendant has its principal place of business here.

9.      Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d). Defendant would be subject to personal jurisdiction in this District if this District were a separate state.  Defendant has its principal place of business here.  And Defendant sells the Coppertone Sport Mineral FACE products here.

## IV.    Facts.

### A.    Defendant makes, markets, distributes and sells Coppertone Sport Mineral and Coppertone Sport Mineral FACE sunscreen lotions.

10.     Defendant makes, markets, distributes and sells the Coppertone Sport Mineral line of sunscreens.

11.     The Coppertone Sport Mineral line of sunscreens includes various products such as lotions and spray bottles, each with various SPF ratings.

12.     One of the products in the Coppertone Sport Mineral line is the regular

Coppertone Sport Mineral lotion.  It comes in 5-ounce bottles.  An example is shown below: [2]



13.    Another product in the Coppertone Sport Mineral line is the Coppertone Sport Mineral FACE lotion.  It comes in smaller, 2.5-ounce bottles.  An example is shown below: [3]



14.    The label of the Coppertone Sport Mineral FACE lotion is almost identical to that of the regular Coppertone Sport Mineral lotion, with one important exception: the FACE lotion

---

[3] https://www.walmart.com/ip/Coppertone-Sport-Mineral-Face-Sunscreen-Lotion-SPF-50-2-5oz/789123873?athbdg=L1600

is prominently labelled "FACE."  And it includes face-specific representations, such as "Won't Run Into Eyes" and "Oil Free". [4]

15.     These representations are materially the same across all Coppertone Sport Mineral FACE lotions.  That is, all the labels of all Coppertone Sport Mineral FACE lotions are substantially similar.

16.     Both the regular Coppertone Sport Mineral and the Coppertone Sport Mineral FACE lotions recently got a "new look."  This is shown below:

---

[4] "Oil-free" is important for face use because, as consumers know, oil can clog pores and lead to break outs on the face.

**Regular** [5]:







SAME TRUSTED SUN PROTECTION

---

[5] https://www.walmart.com/ip/Coppertone-Sport-Mineral-Sunscreen-SPF-50-Lotion-Zinc-Oxide-UVA-UVB-Protection-5-fl-oz/286215538

**FACE** [6]:



17.     As the pictures show, the "old" labels are substantially similar to the "new" ones.

In particular, both the old and new labels for the Coppertone Sport Mineral FACE lotion are

___

[6] https://www.walmart.com/ip/Coppertone-Sport-Mineral-Face-Sunscreen-Lotion-SPF-50-2-5oz/789123873?athbdg=L1600

prominently labelled "FACE" and include the same prominent face-specific representations: "Won't Run Into Eyes" and "Oil Free."

**B.    The Coppertone Sport Mineral FACE label is misleading to reasonable consumers.**

18.    Based on the prominent "FACE" marking and face-specific representations on the front label of the Coppertone Sport Mineral FACE products, reasonable consumers believe that the lotion is specifically formulated for use on the face.  In other words, reasonable consumers believe that there is something different about the Coppertone Sport Mineral FACE lotion that makes it better suited for use on the face, as compared to regular Coppertone Sport Mineral lotion.

19.    The pricing of Coppertone Sport Mineral FACE reinforces this reasonable belief. Across retailers, a 2.5-ounce container of Coppertone Sport Mineral FACE costs the same as a 5-ounce container of "regular" Coppertone Sport Mineral.  This means that per ounce, Coppertone Sport Mineral FACE costs twice as much as regular Coppertone Sport Mineral.  For example, Walmart sells 2.5-ounce containers of SPF 50 Coppertone Sport Mineral FACE for $9.98—$3.99/ounce. [7]  And it sells 5-ounce containers of regular SPF 50 Coppertone Sport Mineral for $9.98—$1.99/ounce. [8]  The same is true for other retailers: per ounce, "FACE" costs twice as much as regular Coppertone Sport Mineral. [9]  In markets where different retailers sell the same product, the price retailers charge is correlated with and driven by the price that manufacturers

---

[7] https://www.walmart.com/ip/Coppertone-Sport-Mineral-Face-Sunscreen-Lotion-SPF-50-2-5oz/789123873?athbdg=L1600

[8] https://www.walmart.com/ip/Coppertone-Sport-Mineral-Sunscreen-SPF-50-Lotion-Zinc-Oxide-UVA-UVB-Protection-5-fl-oz/286215538

[9] For example, on Amazon.com, regular Coppertone Sport Mineral and Coppertone Sport Mineral FACE are $9.98—even though the bottle of regular Coppertone Sport Mineral is twice as large.  Likewise, on Walgreens.com, regular Coppertone Sport Mineral and Coppertone Sport Mineral FACE are both $11.99—even though the bottle of regular Coppertone Sport Mineral is twice as large.

charge retailers.  Accordingly, this retail pricing is correlated with and driven by the pricing that

retailers pay for Coppertone Sport Mineral FACE and Coppertone Sport Mineral, which is set by

Defendant.  Moreover, across retailers, the 2.5-ounce bottle of Coppertone Sport Mineral FACE

costs the same as a 5-ounce bottle of Coppertone Sport Mineral.  By contrast, as detailed below,

other smaller bottles of Coppertone sunscreen without FACE-specific representations cost less

than larger bottles of the same product.  Based on this, it appears that the wholesale price that

Defendant charges retailers for Coppertone Sport Mineral FACE is the same (i.e., is twice as

much per ounce) as the "regular" Coppertone Sport Mineral.

      20.     The difference in pricing further indicates to reasonable consumers that the FACE

product is specially formulated for the face, while the regular product is not, thus justifying the

difference in price.  In particular, although larger containers of sunscreens and other cosmetics

may cost slightly less per ounce than smaller containers of the same sunscreen or other cosmetics

due to volume discounts, honest retailers do not charge *the same* price for them.  Smaller bottles

of the same sunscreen cost less.  Nor do honest retailers charge *double* per ounce for the same

product just because it comes in a smaller bottle.  In other words, reasonable consumers expect

that for the same sunscreen or cosmetic, a smaller container will cost less than a larger container.

So, the fact that a 2.5-ounce bottle of Coppertone Sport Mineral FACE costs *the same* as the 5-

ounce bottle of "regular" Coppertone Sport Mineral—and double per ounce—tells reasonable

consumers that Coppertone Sport Mineral FACE is different from "regular" Coppertone Sport

Mineral.  This makes sense: why would anyone pay (or charge) the same for *less* of the same

thing?

      21.     Notably, this is true for TSA-compliant, "travel-size" sunscreens too.  For

example, another line of Coppertone sunscreen is the traditional (non-mineral) Coppertone Sport.

Defendant sells that sunscreen in different containers, including a "regular" 7-ounce container

and a TSA-compliant, "travel-size" 3-ounce container.[10]  Unlike Coppertone FACE, however,

the "travel-size" version does not contain different representations suggesting that it is

specifically formulated for a special purpose such as facial application.  Instead, for the "travel

size" version, Defendant's labels truthfully indicate to consumers that they are getting the exact

same sunscreen in a smaller container appropriate for travel.  And, although the 7-ounce

container does cost slightly less per ounce than the "travel size" one, it does not cost *double* per

ounce, or anywhere close to that.  And the travel-size container overall costs far less than the

regular 7-ounce container (from Walmart, $8.26 for the "travel size" versus $14.56 for the

regular size).  This confirms that, even for "travel size" sunscreens, reasonable consumers expect

that smaller bottles of the same thing will cost less than larger bottles of the same thing.

     22.     As alleged above, Defendant is responsible for these differences in pricing.

     23.     In truth, however, Coppertone Sport Mineral FACE is not specially formulated

for the face.  Nor is it more expensive to manufacture.  Quite the opposite, it is identical to

regular Coppertone Sport Mineral, which costs half as much (or the same amount for a bottle

twice the size).  Defendant is taking the same exact product and putting it in two different

bottles, one prominently marked "FACE" and one not.  And then it is charging twice as much for

the sunscreen in the bottle marked "FACE" (the same for both bottles, even though one is twice

the size of the other).  In short, Defendant is tricking consumers into thinking they are buying

sunscreen lotion specially formulated for the face, when in reality, they are just buying

---

[10] https://www.walmart.com/ip/Coppertone-Sport-Sunscreen-Lotion-SPF-30-7-Fl-Oz/51222470 ("regular" 7-ounce); https://www.walmart.com/ip/Coppertone-Sport-Sunscreen-Lotion-SPF-30-3-fl-oz-Travel-Size/50346156?irgwc=1&sourceid=imp_z%3A6xXRQS7xyIWuQ1YIUngSoRUkDTdz3UKTnvXg0&veh=aff&wmlspartner=imp_392844&clickid=z%3A6xXRQS7xyIWuQ1YIUngSoRUkDTdz3UKTnvXg0&sharedid=63373662bc429350cb23bd2e&affiliates_ad_id=568852&campaign_id=9383 ("travel size" 3-ounce)

Defendant's regular Sport Mineral sunscreen in a smaller—and far more expensive—bottle. And through this trickery, Defendant is able to charge more for Coppertone Sport Mineral FACE than it otherwise could. Purchasers are paying more than they otherwise would for sunscreen as a direct result of Defendant's deception.

24.    That Defendant is able to charge twice as much for Coppertone Sport Mineral sunscreen when it is prominently labelled "FACE" and includes face-specific representations demonstrates that Defendant's labelling is misleading. No reasonable consumer who understood that Coppertone Sport Mineral FACE is identical to regular Coppertone Sport Mineral would choose to pay twice as much for it. Notably, there are "travel-size" sunscreens that do not cost twice as much as a regular bottle of the same thing available for purchase to consumers who need a travel-size bottle of sunscreen. So the very fact that Defendant is able to sell Coppertone Sport Mineral FACE sunscreen demonstrates that its labelling is misleading consumers.

25.    Defendant's deceptive practices increased the demand for Coppertone Sport Mineral FACE and allowed Defendant to charge a price premium for it. As explained above, Defendant's deceptive practices led reasonable consumers to believe that Coppertone Sport Mineral FACE was specifically formulated for use on the face. Based on this reasonable belief, consumers are willing to pay more, and do pay more, for Coppertone Sport Mineral FACE than they otherwise would. Moreover, as explained above, the retail pricing for Coppertone Sport Mineral FACE is correlated with and driven by the wholesale pricing set by Defendant. Accordingly, as a result of Defendant's deceptive practices, class members including Plaintiff paid a price premium for the Coppertone Sport Mineral FACE products they purchased. As purchasers, Plaintiff and each class member paid this price premium and sustained economic injury. In addition, if they had known the truth, class members could have purchased the same product for half as much per ounce as they paid. Accordingly, Plaintiff and each class member

overpaid for the Coppertone Sport Mineral FACE product they purchased and sustained economic injury for this additional reason.  Defendant is the proximate and but-for cause of Plaintiff and the class's injuries.

**C.      Plaintiff was misled by Defendant's misrepresentations.**

26.      In or around June 2022, Ms. Akes bought a 2.5-ounce bottle of Coppertone Sport Mineral FACE at a Walmart Supercenter in Fresno, CA.  The package said "FACE" prominently on the label.  The product also stated "Won't Run Into Eyes" and "Oil Free."  A picture of the bottle is shown below:



27.     Ms. Akes read and relied on the "FACE" statement, as well as the additional face-specific representations on the front label of the product, when she purchased the product.  Based on these representations, Ms. Akes believed that the product was specially formulated for use on the face, and bought it specifically for this reason.  Ms. Akes would not have purchased this product if she had known that the product was, in fact, identical to regular Coppertone Sport Mineral FACE, which costs half as much.  Moreover, the price Ms. Akes paid for this product was inflated due to the misleading FACE and face-specific representations.  Had she known the truth, Ms. Akes could have purchased the same product for half as much per ounce as she paid.  Accordingly, Ms. Akes suffered an economic injury as a result of Defendant's deceptive conduct.

**V.     Class action allegations.**

28.     Plaintiff brings certain claims on behalf of the proposed class of: all persons who purchased a Coppertone Sport Mineral FACE Product in the United States during the applicable statute of limitations (the "**Nationwide Class**").

29.     For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in certain identified states (the "**Consumer Protection Subclass**").

30.     For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who, like Plaintiff, purchased a Coppertone Sport Mineral FACE Product in California (the "**California Subclass**").

31.     The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the

Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assignees of excluded persons.

### *Numerosity*

32.    The proposed class(es) contain members so numerous that separate joinder of each member of the class is impractical.  Based on the pervasive distribution of Coppertone Sport Mineral FACE products, there are hundreds of thousands of proposed class members (or more).

### *Commonality*

33.    There are questions of law and fact common to the proposed class(es).  Common questions of law and fact include, without limitation:

- Whether the Coppertone Sport Mineral FACE products are formulated specifically for use on the face;

- Whether Defendant's labelling and pricing of the Coppertone Sport Mineral FACE products is misleading;

- Whether Defendant violated state consumer protection statutes;

- Damages needed to reasonably compensate Plaintiff and the proposed class(es).

### *Typicality*

34.    Plaintiff's claims are typical of those of the proposed class(es).  Like the proposed class(es), Plaintiff purchased a Coppertone Sport Mineral FACE product.  Like the proposed class(es), Plaintiff would not have purchased the products, or would have paid less for them, had she known the truth.

### *Predominance and Superiority*

35.    The prosecution of separate actions by individual members of the proposed

15

class(es) would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that the same label is found to be actionably misleading for some proposed class members, but not others.

36.    Common questions of law and fact predominate over any questions affecting only individual members of the proposed class(es). These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendant's labelling is misleading to reasonable consumers.

37.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Plaintiff has no adequate remedy at law.**

38.    Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she and the class have no adequate remedy at law.

39.    To begin, the equitable restitution that Plaintiff requests may go beyond the damages available to her and the class. For example, it may permit her and the class to recover the entire purchase price of the products at issue, as opposed to merely the price premium attributable to Defendant's deception.

40.    Moreover, the equitable remedies Plaintiff requests are more certain than the legal remedies Plaintiff requests. This is because obtaining damages requires additional showings not

required for restitution. For example, to obtain damages under the CLRA, Plaintiff must show

that she complied with the CLRA's notice requirement for damages.  No such requirement exists

for Plaintiff's unjust enrichment claims.

41.    Finally, the remedies at law available to Plaintiff are not equally prompt or

otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will

take longer, and be more expensive, than a bench trial.

**VII.    Claims.**

### Count I: Violations of State Consumer Protection Acts
#### (on behalf of Plaintiff and the Consumer Protection Subclass)

42.    Plaintiff incorporates by reference each and every factual allegation set forth

above.

43.    As alleged below, Plaintiff (who lives in California) brings her individual and

certain subclass claims based on California consumer protection laws.  At the motion to dismiss

stage (pre-certification), her claims are governed by California law.  At certification, Plaintiff

intends to certify this count on behalf of the Consumer Protection Subclass, which includes

consumers who live in the states listed below, which have materially-similar laws.

| State | Statute |
|---|---|
| California | Cal. Bus. & Prof. Code § 17200, and the following; Id. §17500, and the following<br><br>Cal. Civ. Code §1750 and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| Connecticut | Conn. Gen. Stat. Ann. §§ 42-110, and the following. |

44.    Each of these statutes is materially similar to California consumer protection law.

Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers. No state requires proof of individualized reliance, or proof of defendant's knowledge or intent to deceive. Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers acting reasonably under the circumstances and that the conduct proximately caused harm. As alleged in detail above, Defendant's conduct violates each statute's shared prohibitions.

45.     Defendant's conduct, including the misleading labelling of the Coppertone Sport Mineral FACE products with the "FACE" representation and related face-specific misrepresentations, and the sale of those products to Plaintiff and Class members, violates each statute's prohibitions. Plaintiff saw and relied on these representations.

46.     Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Coppertone Sport Mineral FACE products. As alleged in detail above, these misrepresentations are important to consumers and affect their choice to purchase the products. And no reasonable consumer who knew the truth would choose to pay twice as much for the same thing.

47.     Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decisions and the purchase decisions of class members, and were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members, including the price premium that Plaintiff and class members paid.

48.     Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Coppertone Sport Mineral FACE products if they had known the truth and (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation.

## Count II: Violation of California's Unfair Competition Law (UCL)
### (on behalf of Plaintiff and the California Subclass)

49.    Plaintiff incorporates by reference and re-alleges each and every factual allegation set forth above as though fully set forth herein.

50.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

51.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

52.    The Unlawful Prong: Defendant engaged in unlawful conduct by violating the California Sherman Act, Cal. Health & Safety Code § 110390, which prohibits drug and cosmetics labelling that is "false or misleading in any particular."  In addition, Defendant engaged in unlawful conduct by violating the FAL, as alleged below and incorporated here.

53.    The Fraudulent Prong: As alleged in detail above, Defendant's representations were false and misleading.  Defendant's misrepresentations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.

54.    The Unfair Prong: Defendant violated established public policy by violating the CLRA and FAL, as alleged below and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the Sherman Act and FAL).

55.    The harm to Plaintiff and the Subclass greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misleading consumers into thinking that sunscreen not specifically formulated for the face is formulated specifically for the face, and overcharging them for it.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading labels only injure healthy competition and harm consumers.

56.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

57.    Plaintiff and the Subclass could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceiving to reasonable consumers like Plaintiff.

*    *    *

58.    For all prongs, Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Coppertone Sport Mineral FACE sunscreen.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

59.    Classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Coppertone Sport Mineral FACE sunscreen.

60.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

61.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Coppertone Sport Mineral FACE products if they had known the truth and (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation.

**Count III: Violation of California's False Advertising Law (FAL)**
**(on behalf of Plaintiff and the California Subclass)**

62.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

63.    Plaintiff brings this cause of action on behalf of herself and members of the

California Subclass.

64.    As alleged more fully above, Defendant has falsely advertised Coppertone Sport Mineral FACE products by falsely representing that the products were specifically formulated for use on the face, when in fact the products are identical to regular Coppertone Sport Mineral.

65.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

66.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing a Coppertone Sport Mineral FACE product.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

67.    Classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Coppertone Sport Mineral FACE.

68.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

69.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Coppertone Sport Mineral FACE products if they had known the truth and (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation.

### Count IV: Violation of California's Consumer Legal Remedies Act (CLRA)
**(on behalf of Plaintiff and the California Subclass)**

70.    Plaintiff incorporates each and every factual allegation set forth above.

71.    Plaintiff brings this cause of action on behalf of herself and members of the

California Subclass.

72.    Plaintiff and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

73.    Plaintiff, other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

74.    The conduct alleged in this Amended Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

75.    As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff and the other members of the California Subclass that the products were specifically formulated for use on the face, when in fact the products are identical to regular Coppertone Sport Mineral.

76.    As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

77.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were false and misleading.

78.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing the products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decisions of Subclass members.

79.    In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in

deciding whether to buy the products.

80.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

81.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Coppertone Sport Mineral FACE products if they had known the truth and (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation.

82.     Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the California Subclass, seeks injunctive relief.

83.     CLRA § 1782 NOTICE. On July 6, 2022, a CLRA demand letter was sent to Defendant's headquarters and California registered agent, via certified mail (return receipt requested). This letter provided notice of Defendant's violation of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Defendant did not respond to this letter within 30 days of mailing. Accordingly, Plaintiff seeks all monetary relief available under the CLRA.

### Count V: Quasi-Contract / Unjust Enrichment
### (on behalf of Plaintiff and a Nationwide Class)

84.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

85.     Plaintiff alleges this claim individually and on behalf of a Nationwide Class.

86.     As alleged in detail above, Defendant's false and misleading labelling caused Plaintiff and the Nationwide Class to purchase Coppertone Mineral Sport FACE to pay twice as much for these products.

87.     In this way, Defendant received a direct and unjust benefit, at Plaintiff and the

Nationwide Class's expense.

88.    Plaintiff and the Nationwide Class seek restitution.

**VIII.    Jury demand.**

89.    Plaintiff demands a jury trial on all issues so triable.

**IX.    Relief.**

90.    Plaintiff seeks the following relief individually and for the proposed class(es):

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class(es);

- Damages;

- Restitution;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

Date: October 3, 2022                              Respectfully submitted,


                                                   By: */s/ Simon Franzini*

                                                   DOVEL & LUNER, LLP
                                                   Simon Franzini (Cal. Bar No. 287631)*
                                                   simon@dovel.com
                                                   Jonas B. Jacobson (Cal. Bar No. 269912)*
                                                   jonas@dovel.com
                                                   201 Santa Monica Blvd., Suite 600
                                                   Santa Monica, California 90401
                                                   Telephone: (310) 656-7066
                                                   Facsimile: (310) 656-7069

                                                   IZARD, KINDALL & RAABE LLP
                                                   Craig A. Raabe (ct04116)
                                                   Seth R. Klein (ct18121)
                                                   29 South Main Street, Suite 305 West

Hartford, CT 06107
T: (860) 493-6292
F: (860) 493-6290
craabe@ikrlaw.com

*Counsel for Plaintiff*

*Admitted Pro Hac Vice

**California Civil Code Section 1780(d) CLRA Venue Declaration**

I, Simon Franzini, declare:

1.      I am a partner in Dovel & Luner, LLP and an attorney licensed to practice in the State of California.  I am admitted *pro hac vice* and am counsel of record for Plaintiff in this action.  I have personal knowledge of the facts set forth in this declaration.  If called as a witness, I could and would competently testify to them under oath.

2.      This action was commenced in a county described in California Civil Code Section 1780(d) as a proper place for the trial of the action.  Defendant resides and has its headquarters and principal place of business, and is doing business, in Fairfield county, which is within this District.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct to the best of my knowledge and that this declaration was signed on October 3, 2022 in Santa Monica, California.

*/s/ Simon Franzini*
Simon Franzini

26